CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

JEAN M. FUNDAKOWSKI (CABN 328796)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Facsimile: (415) 436-7234
    Jean.Fundakowski@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CASHMIR CHINEDU LUKE, <br> AKA CHINEDU CASHMIRE OSUAGWU, <br> AKA CASHMER C. OSUAGWU <br><br> Defendant. | CASE NO. 3:25-MJ-71442-MAG <br><br> MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |

## I.  INTRODUCTION

From December 2019 to July 2024, Defendant operated and was the sole owner of a health care company called Four Corners Health, LLC ("Four Corners") that was paid to provide in-home unskilled nursing care to veterans under a Department of Veterans Affairs health care benefit program, the Veterans Community Care Program.  According to a Department of Veterans Affairs Office of Inspector General ("VAOIG") investigation, Four Corners cut corners—by submitting millions of dollars of fraudulent claims for reimbursement to the Department of Veterans' Affairs ("VA") and the VA's third-party benefits administrator ("TPA 1").  Four Corners allegedly defrauded the VA and TPA 1 by submitting duplicate claims for care that was actually provided; claims for care provided to deceased veterans; claims for care provided on days when there was no caregiver with a given veteran; and claims for hours not actually worked on days where a caregiver actually visited a veteran.

Between September 2020 and February 2024, the VA and TPA 1 paid $9.77 million dollars in reimbursements into a bank account solely controlled and accessed by the Defendant.  Defendant funneled at least $1.6 million of those proceeds to offshore accounts in Africa and Asia.  When TPA 1 tried to recover the funds, the Defendant agreed to make repayment and then reneged on those promises, causing TPA 1 to bring a civil suit and obtain a court order to serve the suit by publication because of Defendant's months-long efforts to avoid service.  Records obtained in a post-arrest search executed at Defendant's residence on December 4, 2025, indicate that some of these proceeds were likely used to purchase substantial tracts or plots of land in Nigeria, where Defendant, a dual citizen of the United States and Nigeria, has substantial family ties.

Based on the Defendant's prior conviction of identity theft and passport fraud; ties to a foreign country; serious criminal exposure in the underlying matter; recent disappearance to avoid legal process in a related civil proceeding; and access to millions of dollars of funds transferred to international accounts, the government submits that "no condition or combination of conditions will reasonably assure the appearance of the person [i.e., the defendant] as required and the safety of any other person and the community."  *Id*. § 3142(e)(1).

## II. FACTUAL BACKGROUND

### A. 2009 Passport and Identify Theft Conviction

Defendant has a history of fraud and identity theft that dates to 2006. In 2009, Defendant was tried and convicted in the U.S. District Court for the District of Maryland for conspiracy to commit identification document fraud, in violation of 18 U.S.C. § 1028(f), and aggravated identity theft, in violation of 18 U.S.C. § 1028A. *United States v. Luke*, 628 F.3d 114, 117-18 (4th Cir. 2010) (affirming conviction). At trial, the government presented evidence that in October 2006, the Defendant, who was working as a respiratory therapist at a rehabilitation hospital, stole the identity of a patient with traumatic brain injury to submit a fraudulent U.S. passport application in Pennsylvania using the patient's name and Defendant's address and phone number. *Id*. at 116. Defendant also submitted a second fraudulent passport application in Maryland using the identity of his son to benefit a third-party recipient. Defendant was sentenced to 37 months in custody. *Id*. at 118. Following this conviction, the Maryland State Board of Pharmacy revoked Defendant's pharmacy license. *In the Matter of Cashmir Luke*, Case No. 10-009 (Md. St. Bd. of Pharm. Aug. 31, 2022) (denying petition to reinstate Defendant's license).

### B. 2018 Fraud at Medical One Home Care

Before Defendant created and began operating Four Corners, he started another health care company called Medical One Home Care that provides unskilled nursing services to veterans. His sister and proposed custodian, Victoria Nwokochah, was one of his business partners. In July 2018, the Director of Home and Community Based Care at the VA Palo Alto Health Care System referred Medical One to the VAOIG for seeking reimbursements for care provided to three deceased veterans. Ms. Nwokochah was listed as a Secretary of Medical One Home Care in its most recent Statement of Information, which was filed on October 15, 2019, after the VAOIG referral. When the Defendant was arrested on February 1, 2025, *Miranda* rights were administered, and he agreed to speak with VAOIG agents. He admitted that Four Corners was a "spin-off" of Medical One.

### C. Defendant Transferred Millions of Dollars of Fraudulently Obtained VA and TPA 1 Funds to Offshore Accounts paid to Four Corners Between 2021 and 2024

Over the course of the Four Corners fraud scheme alleged in the Complaint, the VA and TPA 1

paid approximately $9.77 million in reimbursements for health care to a Four Corners bank account controlled and accessed exclusively by the Defendant ("the Four Corners Account"). Approximately $7 million dollars of that total was allegedly fraudulently obtained from bogus home health claims, such as billing for 18 to 28 hours of care provided by a single provider on a single day, or billing for care provided to veterans who were deceased and had no need of nursing services.

In November 2021, TPA 1 identified a large number of duplicate claims paid to Four Corners and contacted the Defendant. Defendant entered into a written $2.8 million repayment program with TPA 1 on February 9, 2023. Defendant admitted the overpayment had occurred but subsequently failed to make any of the nine promised installment payments.

Even as Defendant represented to TPA 1 that he would honor the repayment agreement, he rapidly transferred funds received from the TPA 1 and VA to international accounts and banks, depleting the Four Corners Account. Between October 2022 and April 2023 alone, Defendant transferred $1.6 million to bank accounts in those countries. That pace increased after the execution of the repayment agreement. Subpoenaed Four Corners Account records establish that Defendant executed 65 transfers between February 2023 and May 2025, the majority of which were directed to overseas banks or accounts in Nigeria, China, and India. As part of the promised repayment, Defendant told TPA 1 that he mailed a $314,000 check to TPA 1 on April 23, 2023, and a second check for $314,000 on May 8, 2023. Neither check arrived. But by April 2023 the Account had dwindled to approximately $31,000 in available funds, and in May 2023 it had approximately $20,000 in available funds. Thus, TPA 1 could not have cashed those checks even if it had received them.

Defendant executed a second repayment agreement worth $1.8 million with TPA 1 on January 2, 2024. Defendant agreed to make 24 monthly payments under the second agreement, but he made none of them. On April 14, 2024, Defendant asked TPA 1 to reinstate Four Corners's eligibility for claims reimbursement for skilled nursing care services. TPA 1 refused and terminated its business relationship with Defendant in June 2024, informing Defendant it had retained outside counsel to initiate a civil lawsuit.

**D.      Defendant Evaded Civil Process Servers from June 2024 to May 2025**

TPA 1's litigation counsel, Michelle Landry of Vetter Price, LLP, attempted to execute service

of the civil suit against Defendant from approximately June 2024 to May 2025. Defendant spoke with Attorney Landry several times by phone, but he refused to provide a valid address for service and took proactive measures to avoid service. These measures included changing the name of Four Corners to Tri-4 Healthcare, LLC, and resigning as agent for service of process on July 9, 2024; changing Tri-4 Healthcare, LLC's name to TriFour Healthcare, LLC on July 31, 2024, without designating an agent for service of process; and removing Defendant as a manager of TriFour on February 18, 2025. Defendant also provided Attorney Landry with a phone number to reach him which was the phone number for a construction company that denied any affiliation with the Defendant and then changed or disconnected the existing number she had previously used to contact him. Defendant also appeared to give Attorney Landry a false address in Stockton. After nine attempts to effect service of process, Vetter Price obtained a court order authorizing service by publication in May 2025.

Attorney Landry will be present in court at the detention hearing on December 5, 2025, and she is available to answer any questions the Court may have about Defendant's efforts to evade service of process.

### E.    Defendant Has Strong Financial and Familial Ties to Nigeria

Defendant is a dual citizen of the United States and Nigeria. On the date of his arrest, law enforcement seized his US and Nigerian passports. As he informed Pretrial Services in his bail interview, he makes yearly visits and four of his eight siblings reside in Nigeria.

Defendant also appears to own a substantial amount of property in Nigeria and has opened banking or checking accounts there within the past four years. On December 4, 2025, VAOIG agents effected a search of Defendant's home at 10117 Tiziano Drive in Stockton, California, pursuant to a search warrant issued in the Eastern District of California by Magistrate Judge Erica P. Grosjean. In that residence, agents found records indicating that Defendant purchased land in Nigeria within the same time period that Four Corners was receiving reimbursements in the alleged fraud scheme from the VA and TPA 1. Specifically, agents found a Contract of Sale dated April 1, 2021, for the purchase of 80 commercial and non-commercial plots of land in Lagos State, Nigeria, and what appears to be a Deed of Assignment for a different commercial plot of land in Abuja, Nigeria, dated August 6, 2020. Agents also discovered a March 30, 2021, letter from United Bank for Africa indicating that the bank issued

Defendant a debit card; and a March 6, 2024, and a notice from Zenith Bank, an Internet banking service or bank that appears to be based in Nigeria.

### F. Ongoing Contact with Four Corners Employees

Four Corners has not submitted any claims for care since 2024, and it appears to be defunct. After Defendant was arrested and Mirandized, he provided a voluntary statement to law enforcement that he had contacted Subject 1 approximately three weeks ago. As set forth in the Complaint, Subject 1 was Defendant's office manager and administrator and likely has knowledge of the alleged fraudulent scheme.

## III. LEGAL STANDARD

The Bail Reform Act permits pretrial detention of a defendant where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id*. A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id*. Consideration of factors outside those articulated in section 3142 is also disfavored. *Id*.

Ultimately, the four factors to determine whether to detain pretrial are: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV.	ARGUMENT

### A.	The Defendant Presents A Serious Risk Of Flight

#### 1.	Incentives To Flee: Weight of the Evidence and Potential Punishment

The Complaint contains a detailed recitation of Defendant's five-year involvement in a scheme to receive compensation from the VA and TPA 1 for nursing care to elderly veterans that was never provided. The evidence includes reports from the family members of two deceased veterans; comparisons of the payroll disbursements made by Four Corners employees to the number of hours billed; and evidence from Four Corners' submitted claims which show that Four Corners frequently billed for 18 to 28 hours of care for a single veteran on a single date. For example, VAOIG investigators have learned that Four Corners billed VA $141,926.92 for services provided through February 11, 2023, to a veteran who died on August 5, 2022.

If convicted, Defendant faces a maximum sentence of ten years in custody; a $250,000 penalty; 3 years of supervised release; and restitution. Given the evidence against Defendant and amount of money allegedly fraudulently received, Defendant's sentencing guidelines may approach or even exceed the statutory maximum of 10 years. He therefore has a strong incentive to flee to avoid a substantial prison sentence and restitution order. Even if Defendant were not convicted in this criminal proceeding, he faces additional civil liability in the pending suit brought by TPA 1.

#### 2.	Ability To Flee: Knowledge and Access to Resources That Would Enable Flight

Defendant has knowledge of how to falsify passport applications and has a prior conviction for passport fraud. The December 4, 2025, search of his residence and the Four Corners Account records demonstrate that he has transferred substantial sums of money to bank accounts outside of the United States; has Nigerian bank accounts; and owns a substantial amount of property or investments in Nigeria.

Retaining Defendant's Nigerian and U.S. passports is not an adequate deterrent to flight. As evidenced by his 2009 conviction, the Defendant knows how to falsify travel documents, and he is willing to do so even when he is not facing threat of prosecution. Because he declined to provide any information about his access to the millions of dollars paid to his company from 2020 to 2024, it is

impossible to assess what resources he has or could access in an attempt to flee the United States. Moreover, Defendant spent months successfully evading civil process servers in the civil suit, demonstrating an ability to avoid detection when he does not wish to be located.

### 3. Ties To the United States

Defendant is a dual citizen of Nigeria and the United States; he is unmarried and has a large extended family living abroad that he regularly travels to visit, including a brother in Canada and five siblings in Nigeria. The Bail Report indicates that he has some family in the United States, including two adult siblings in Antioch, California; two adult children in Maryland; and one minor child in Bay Point, California who does not reside with him. He does not own any property or other assets based in the United States, and his sister reported that he is in debt; he has not paid his rent in some time, owes money to the Internal Revenue Service, and is unemployed. All of his assets appeared to have been transferred or invested abroad.

### 4. Reliability And Trustworthiness of the Defendant

When asked about his financial resources, Defendant reported that he filed for bankruptcy in 2019 and declined to report any more financial information from the past five years, the operative years of the alleged fraud scheme. He also declined to provide any additional employment information other than that he has unemployed since May of 2024, about the time that VA and TPA 1 reimbursements in the alleged fraud scheme ceased. Given that Defendant was unwilling to discuss access to any funds he wired abroad or what happened to any other proceeds of the $9.77 million paid to the Four Corners Account up to June 2024, the Court cannot trust in Defendant's candor about his access to financial assets.

## B. Defendant's Proposed Custodians and Sureties

The Defendant has proposed two custodians and sureties: Henrietta Hutchinson, a friend he has known since 2020 who lives with him, and Victoria Nwokochah, his sister.

Ms. Hutchinson is not suitable to act as a custodian and monitor Defendant's compliance with the law: on March 6, 2020—in the midst of the alleged fraudulent scheme—Defendant filed articles of organization for Green Acre Micro LLC, listing himself as the organizer and manager and Ms. Hutchinson as the agent for service of process. When VAOIG interviewed Ms. Hutchinson after

Defendant's arrest, she informed the agent that she had never heard of Green Acre Micro LLC, indicating that either Defendant used Ms. Hutchinson's identity without her permission or knowledge in the past, or that she was not candid in the interview.

Ms. Nwokochah was involved or may still be involved in the operation of Medical One Home Care, Defendant's home health care company that was referred to VAOIG in 2018 for investigation of submitting claims for care provided to deceased veterans, the same conduct at issue in the instant case against Defendant. Moreover, in January 2023, Defendant transferred $12,000 of alleged fraudulently obtained funds from the Four Corners Account to Ms. Nwokochah. As a direct beneficiary of the alleged fraud scheme and someone who may have knowledge of Defendant's relevant conduct to this case, she is not suitable to serve as a custodian.

### C. The Section 3142(G) Factors Weigh In Favor Of Detention

The Section 3142(g) factors weigh in favor of detention. Evidence of the Defendant's guilt and likely period of federal imprisonment "makes it more likely that he will flee. . ." *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (affirming district court finding government met burden of showing flight risk and danger to the community in motion for pretrial detention pending re-trial where defendant faced lengthy period of incarceration). Here, there is substantial evidence of Defendant's guilt and Defendant is facing additional exposure in pending civil litigation based on the same fraud scheme alleged in the complaint. He has no assets in the United States, but has made substantial transfers of funds abroad, owns property abroad, and has a large extended family abroad that he visits on a yearly basis. His lack of candor about his financial information to Pretrial Services, efforts to evade service of process in the pending related civil suit, and past conviction for passport fraud demonstrate that he has the ability and knowledge to flee, and as a dual citizen of the United States and Nigeria, he has an obvious destination.

## V. CONCLUSION

For the foregoing reasons, the Defendant should remain detained pending trial.

1  DATED: December 4, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

_____
JOAN FUNDAKOWSKI
Assistant United States Attorney